IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOTUN AIYEGBUSI,<br>**Plaintiff,**<br><br>v.<br><br>STEPHEN NKANSAH,<br>**Defendant.** | CIVIL ACTION<br><br><br><br>NO.  19-4319 |

**DuBois, J.**                                                                                      **June 11, 2020**

**M E M O R A N D U M**

## I.     INTRODUCTION

Plaintiff, Dotun Aiyegbusi, asserts a claim against defendant Stephen Nkansah for wrongful use of civil proceedings pursuant to the Dragonetti Act, 42 Pa. Cons. Stat. § 8351 *et seq.*  Presently before the Court is Nkansah's Motion to Dismiss the Amended Complaint.  For the reasons set forth below, the motion is denied.

## II.    BACKGROUND[1]

The facts below are drawn from plaintiff's Amended Complaint, the exhibits attached to the Amended Complaint, and matters of public record.  The Court construes that complaint in the light most favorable to the plaintiff, as it must in ruling on a motion to dismiss.

### A.  Events Preceding the Underlying Action

In June 2014, during a conference call with Robert Towns, Robert Williams, and Byron Drayton, defendant Nkansah entered into an oral agreement to invest in Wazzoo Juices

---

[1]      "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).  "Additionally, a court 'may take judicial notice of the contents of another Court's docket.'"  *Bainbridge v. Ocwen Loan Servicing, LLC*, No. 3:16-CV-0411, 2017 WL 1178047, at *12 (M.D. Pa. Mar. 30, 2017) (quoting *Orabi v. Attorney Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014)).

("Juices"), a Columbian company.  Am. Compl. ¶ 13, Ex. A ¶¶ 17, 18.  Plaintiff Aiyegbusi was

not a part of that conference call, and Nkansah agreed to invest in Juices "before he ever talked

to or had any form of communication with Aiyegbusi."  Am. Compl. ¶ 14.  On August 6, 2014,

Nkansah was introduced to Aiyegbusi by Towns as a shareholder in Juices, who "could advise

Nkansah on the necessary procedure for Nkansah to be able to transfer money directly to Juices'

account with Bancocolombia."  *Id.* ¶ 17.

"On August 20, 2014, Nkansah wired the sum of $20,100 to Aiyegbusi's account in

Philadelphia, and asked Aiyegbusi to help him forward his $20,000 investment in Wazzoo Juices

to [the] Juices account in Colombia because Nkansah refused to forward his required documents

to the Colombian bank.  The additional $100 was to cover any fees Aiyegbusi was charged by

his bank for the transaction."  *Id.* ¶ 25.  Upon receipt of Nkansah's funds, "Aiyegbusi

immediately wired Nkansah's $20,000 to [the] Wazzoo Juices account as Nkansah instructed."

*Id.* ¶ 26.  "Aiyegbusi never retained Nkansah's money in his possession."  *Id.* ¶ 27.  In December

2014, Nkansah became dissatisfied with his investment in Juices, and demanded that the

investment be returned.  *See* Am. Compl. Ex. A ¶ 33.  His investment was not returned.  *Id.* ¶ 40.

### B.  The Underlying Action

On February 4, 2016, Nkansah filed a civil lawsuit against Aiyegbusi and three

codefendants in the United States District Court for the Eastern District of Pennsylvania, No. CV

16-587 (the "Underlying Action").  Am. Compl. ¶ 6.  In the Complaint, Nkansah asserted a

fraudulent misrepresentation claim against Aiyegbusi.  *Id.*  On January 5, 2017, Nkansah

amended his complaint and alleged a fraud claim and conversion claim against Aiyegbusi.  *Id.* ¶

9, Ex. A.  "Nkansah did not allege [in the amended complaint] that Aiyegbusi said or did

anything to or with Nkansah and Towns that influenced or encouraged Nkansah to enter into the

agreement to invest in Juices." *Id.* ¶ 15.  Moreover, Nkansah never alleged in the Underlying

Action that Aiyegbusi retained possession of Nkansah's funds, or that Aiyegbusi failed to

transfer his funds to the account of Wazzoo Juices, as instructed. *Id.* ¶¶ 18-20.  On July 21,

2017, Nkansah's conversion claim against Aiyegbusi was voluntarily dismissed by stipulation of

the parties.  Stipulation, *Nkansah v. Aiyegbusi*, No. CV 16-587, (E.D. Pa. July 21, 2017), ECF

No. 70.  Later, on October 2, 2017, Judge Gene E.K. Pratter granted Aiyegbusi's motion for

summary judgment on Nkansah's fraud claim against Aiyegbusi on the ground that Nkansah did

"not carr[y] his burden to show that there is a genuine issue of material fact as to his fraud claim

against [Aiyegbusi and two other defendants]." *Nkansah v. Aiyegbusi*, No. CV 16-587, 2017

WL 4387003, at *4 (E.D. Pa. Oct. 2, 2017).

### C.  The Instant Suit

On September 19, 2019, Aiyegbusi filed the instant suit asserting a claim against

Nkansah for wrongful use of civil proceedings pursuant to the Dragonetti Act, based on the

Underlying Action.  Compl. ¶¶ 1-16.  Nkansah moved to dismiss the Complaint on January 23,

2020 (Document No. 4).  Plaintiff responded on February 6, 2020 (Document No. 5).  By Order

dated February 7, 2020, the Court dismissed the Complaint without prejudice (Document No. 6).

On February 19, 2020, Aiyegbusi filed an Amended Complaint (Document No. 7).

In addition to the facts discussed *supra*, the Amended Complaint in this action alleges

that (1) "Nkansah never presented any facts or evidence to substantiate his alleged fraud claim

against Aiyegbusi in the Underlying Action;" (2) Nkansah never presented any evidence that

"Aiyegbusi intended to 'exercise dominion or control over' Nkansah's funds or that Aiyegbusi in

fact exercised dominion or control over Nkansah's funds;" (3) Nkansah "was grossly negligent

when he initiated and prosecuted his false claims of fraud and conversion against Aiyegbusi;" (4)

Nkansah "had no probable cause for his claims of fraud and conversion against Aiyegbusi in the underlying civil action but Nkansah asserted those false claims against Aiyegbusi out of malicious motives and reckless disregard for the harm to Aiyegbusi;" and (5) Nkansah filed the Underlying Action "primarily for an improper purpose and was malicious." Am. Compl. ¶¶ 31-38, 41. Additionally, the Amended Complaint asserts that "Nkansah initiated the Underlying Action with the purpose of using the lawsuit as a means to make Aiyegbusi give Nkansah the funds Nkansah voluntarily transmitted to Juices after Nkansah's business relationship with the other members of Juices went sour." *Id.* ¶ 40. The Amended Complaint also states that the Underlying Action was terminated in Aiyegbusi's favor. *Id.* ¶ 39.

On March 3, 2020, Nkansah moved to dismiss the Amended Complaint (Document No. 8). Aiyegbusi responded on March 17, 2020 (Document No. 10). Nkansah's motion to dismiss the Amended Complaint is thus ripe for decision.

## III.    LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*,

4

556 U.S. at 679.  The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-

pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim

for relief.  *Id.* at 680.

## IV.    APPLICABLE LAW

"The Dragonetti Act codifies the common law tort of wrongful use of civil proceedings in

Pennsylvania."  *Schmidt v. Currie*, 217 F. App'x 153, 155 (3d Cir. 2007) (citing 42 Pa. Cons.

Stat. §§ 8351-8354)).  Under the Dragonetti Act,

> A person who takes part in the procurement, initiation or
> continuation of civil proceedings against another is subject to
> liability to the other for wrongful use of civil proceedings [when]:
>
> (1) he acts in a grossly negligent manner or without probable cause
> and primarily for a purpose other than that of securing the proper
> discovery, joinder of parties or adjudication of the claim in which
> the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against
> whom they are brought.

42 Pa. Cons. Stat. § 8351(a).  To prevail on a claim for wrongful use of civil proceedings under

the Dragonetti Act, a plaintiff must prove that:

> (1) The defendant has procured, initiated or continued the civil
> proceedings against him.
>
> (2) The proceedings were terminated in his favor.
>
> (3) The defendant did not have probable cause for his action.
>
> (4) The primary purpose for which the proceedings were brought
> was not that of securing the proper discovery, joinder of parties or
> adjudication of the claim on which the proceedings were based.
>
> (5) The plaintiff has suffered damages as set forth in [42 Pa. Cons.
> Stat. § 8353].

42 Pa. Cons. Stat. § 8354.  The Act defines probable cause, in relevant part, as follows:

> A person . . . has probable cause . . . if he reasonably believes in the
> existence of the facts upon which the claim is based, and either:
>
> > (1) reasonably believes that under those facts the claim may be
> > valid under the existing or developing law; [or]
> >
> > (2) believes to this effect in reliance upon the advice of counsel,
> > sought in good faith and given after full disclosure of all relevant
> > facts within his knowledge and information[.]

42 Pa. Cons. Stat. § 8352.

"A party seeking redress under the Dragonetti Act bears a heavy burden, because the plaintiff need not only demonstrate either [a lack of] probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose." *Schmidt*, 217 F. App'x at 155 (internal quotation marks omitted). "The court decides the existence of probable cause, gross negligence, or improper purpose as a matter of law when the facts are not in dispute." *Id.*

## V.   DISCUSSION

In the Motion to Dismiss the Amended Complaint, Nkansah argues that (1) Aiyegbusi cannot establish that the Underlying Action was terminated in his favor; (2) Aiyegbusi cannot establish that he lacked probable cause or was grossly negligent in instituting the Underlying Action; and (3) Aiyegbusi's allegation of an improper purpose fails as a matter of law. The Court will address each argument in turn.

### A.  Favorable Termination

Nkansah first argues that Aiyegbusi "cannot establish that the Underlying Action terminated 'favorably' for purposes of a downstream Dragonetti action" because (1) Nkansah's underlying conversion claim was dismissed by stipulation of the parties, and (2) Nkansah's underlying fraud claim against Aiyegbusi was dismissed "as a result of mere procedural defaults

on the part of [Nkansah's] counsel." Mot. Dismiss at 6-8.  The Court disagrees.

Favorable termination under the Dragonetti Act refers to "proceedings," not claims.  *See*

42 Pa. Cons. Stat. § 8351(a) ("[T]he proceedings have terminated in favor of the person against

whom they are brought."); 42 Pa. Cons. Stat. § 8354 ("The proceedings were terminated in

[plaintiff's] favor.").  Thus, a plaintiff seeking relief under the Dragonetti Act must prove that the

underlying "case" terminated in her favor.  *LabMD, Inc. v. Tiversa Holding Corp.*, 785 F. App'x

74, 78 (3d Cir. 2019) (discussing "favorable, final termination of the case"); *Hyldahl v.*

*Denlinger*, 661 F. App'x 167, 171 (3d Cir. 2016) (same); *D'Elia v. Folino*, 933 A.2d 117, 122

(Pa. Super. Ct. 2007) (same).  Indeed, in *Clausi v. Stuck*, 74 A.3d 242, 246 (Pa. Super. Ct. 2013),

the Superior Court of Pennsylvania rejected a plaintiff's argument that because defendants

"specifically withdrew their defamation count, that constitutes a termination in his favor vis-à-vis

that claim."  *Id.*  The *Clausi* court stated that "although [defendants] did remove one claim from

the overall lawsuit, they nevertheless added six more claims and the action is still pending."  *Id.*

Thus, the underlying action had yet to be terminated in plaintiff's favor.  *Id.*

In this case, Nkansah's conversion claim in the Underlying Action was dismissed by

stipulation of the parties.  Stipulation, *Nkansah v. Aiyegbusi*, No. CV 16-587, (E.D. Pa. July 21,

2017), ECF No. 70.  However, Nkansah also asserted a fraud claim against Aiyegbusi, which

remained in the Underlying Action following the dismissal of the conversion claim.  Am. Compl.

¶ 9, Ex. A.  Because Nkansah's fraud claim remained, the Underlying Action was not terminated

with the dismissal of the conversion claim.  *See Clausi*, 74 A.3d at 246.  Accordingly, the Court

must decide whether the fraud claim was terminated in Aiyegbusi's favor in order to determine

whether the Underlying Action was terminated in his favor.

With respect to the fraud claim, Nkansah asserts that it was dismissed by Judge Pratter

"as a result of mere procedural defaults on the part of [Nkansah's] counsel that had nothing to do with the merits of Nkansah's claims." Mot. Dismiss at 9. Therefore, according to Nkansah, Judge Pratter's dismissal of the fraud claim "cannot support a downstream Dragonetti action." *Id.* Nkansah is incorrect.

First, a favorable termination for the purposes of a Dragonetti action "need not be an adjudication on the merits." *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 689 (E.D. Pa. 2009), *aff'd*, 351 F. App'x 747 (3d Cir. 2009) (quoting *Doby v. Decrescenzo*, Civ. A. No 94–3991, 1996 WL 510095, at *16 (E.D. Pa. Sept. 9, 1996)); *Oruska v. Kelly*, No. 1120 MDA 2013, 2014 WL 10749307, at *7 (Pa. Super. Ct. Dec. 9, 2014) ("A prior favorable termination need not be an adjudication on the merits."); *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 554 (W.D. Pa. 2009) (same). Second, Nkansah's description of Judge Pratter's dismissal of the fraud claim "as a result of mere procedural defaults on the part of [Nkansah's] counsel that had nothing to do with the merits of Nkansah's claims." is a gross mischaracterization. Judge Pratter did not dismiss the underlying fraud claim "as a result of mere procedural defaults. Rather, she dismissed Nkansah's fraud claim against Aiyegbusi because Nkansah did "not carr[y] his burden to show that there [was] a genuine issue of material fact as to his fraud claim against [Aiyegbusi and two other codefendants]." *Nkansah v. Aiyegbusi*, No. CV 16-587, 2017 WL 4387003, at *4 (E.D. Pa. Oct. 2, 2017). Thus, the Court concludes that Judge Pratter's dismissal of the fraud claim—the sole remaining claim against Aiyegbusi—on summary judgment constitutes a termination of the Underlying Action in Aiyegbusi's favor.

### B.  The Existence of Probable Cause or Gross Negligence

Nkansah argues that "Aiyegbusi's allegations relative to probable cause or gross negligence also fail as a matter of law." Mot. Dismiss at 9. The Court disagrees.

First, Nkansah fails to present any argument in support of his claim that "Aiyegbusi's

allegations relative to . . . gross negligence also fail as a matter of law."  As discussed *supra*, in

order to prevail under the Dragonetti Act, a plaintiff must prove that defendant initiated the

underlying action without probable cause, or in a grossly negligent manner.  42 Pa. Cons. Stat.

§§ 8351(a)(1), 8352, 8354; *Schmidt*, 217 F. App'x at 155.  Pennsylvania courts have defined

gross negligence as "the want of even scant care and the failure to exercise even that care which

a careless person would use," *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 973 (Pa. Super.

Ct. 2011), or "lack of slight diligence or care, or a conscious, voluntary act or omission in

reckless disregard of a legal duty and of the consequences to another party."  *Bobrick Corp. v.*

*Santana Prod., Inc.*, 698 F. Supp. 2d 479, 497 (M.D. Pa. 2010) (quoting *Schmidt v. Currie*, 470

F. Supp. 2d 477, 480 (E.D. Pa. 2005)), *aff'd sub nom. The Bobrick Corp. v. Santana Prod., Inc.*,

422 F. App'x 84 (3d Cir. 2011).  "The court decides the existence of . . . gross negligence . . . as

a matter of law when the facts are not in dispute."  *Schmidt*, 217 F. App'x at 155.

The Amended Complaint alleges that "Defendant Nkansah was grossly negligent when

he initiated and prosecuted his false claims of fraud and conversion against Aiyegbusi."  Am.

Compl. ¶ 35.  Specifically, the Amended Complaint asserts that: (1) Nkansah agreed to invest in

Juices "before he ever talked to[,] or had any form of communication with[,] Aiyegbusi;" (2)

"Aiyegbusi never met with[,] nor made any representation to[,] Nkansah that was false or that

Nkansah relied upon to his detriment" regarding Nkansah's investment in Juices; (3) Nkansah

knew that Aiyegbusi immediately transferred Nkansah's funds to Juices as Nkansah had

requested, and that Aiyegbusi never retained Nkansah's funds; (4) Nkansah never presented any

evidence in the Underlying Action that Aiyegbusi made any misrepresentations to him, or that

Aiyegbusi participated in any alleged misrepresentations made to Nkansah by the codefendants;

and (5) Nkansah never presented any evidence in the Underlying Action that "Aiyegbusi intended to 'exercise dominion or control over' Nkansah's funds or that Aiyegbusi in fact exercised dominion or control over Nkansah's funds." *Id.* ¶¶ 6, 20, 26, 28, 32.  In sum, the Amended Complaint asserts that Nkansah initiated and continued the Underlying Action when he knew, or should have known, that he had no evidence of fraud or conversion under Pennsylvania law. *Id.* ¶¶ 13-32, 36-38.  The Court thus concludes that the Amended Complaint sufficiently alleges that Nkansah acted with gross negligence in initiating the Underlying Action.

Second, Nkansah asserts that he had probable cause because "it is clear that Nkansah 'reasonably believed' that he presented a valid claim under existing law."  Mot. Dismiss at 11 (internal citations omitted).  As discussed *supra*, in order to prevail under the Dragonetti Act, a plaintiff must prove that defendant initiated the underlying action without probable cause, or in a grossly negligent manner.  42 Pa. Cons. Stat. §§ 8351(a)(1), 8352, 8354; *Schmidt*, 217 F. App'x at 155.  The Act defines probable cause, in relevant part, as follows:

> A person . . . has probable cause . . . if he reasonably believes in the existence of the facts upon which the claim is based, and either:
>
> (1) reasonably believes that under those facts the claim may be valid under the existing or developing law; [or]
>
> (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information[.]

42 Pa. Cons. Stat. § 8352.  To satisfy his burden to show that a defendant lacked probable cause for the Underlying Action, "plaintiff must show the defendant 'had no reasonable basis for filing the underlying action.'"  *Villari Brandes & Giannone, PC v. Wells Fargo Fin. Leasing, Inc.*, No. CIV.A. 13-297, 2013 WL 5468497, at *5 (E.D. Pa. Sept. 30, 2013) (quoting *Broadwater v. Sentner*, 725 A.2d 779, 783 (Pa. Super. Ct. 1999)).  "The court decides the existence of probable

cause . . . as a matter of law when the facts are not in dispute." *Schmidt*, 217 F. App'x at 155.

In this case, the Amended Complaint asserts that: (1) Nkansah agreed to invest in Juices "before he ever talked to[,] or had any form of communication with[,] Aiyegbusi;" (2) "Aiyegbusi never met with[,] nor made any representation to[,] Nkansah that was false or that Nkansah relied upon to his detriment" regarding Nkansah's investment in Juices; (3) Nkansah knew that Aiyegbusi immediately transferred Nkansah's funds to Juices as Nkansah had requested, and that Aiyegbusi never retained Nkansah's funds; (4) Nkansah never presented any evidence in the Underlying Action that Aiyegbusi made any misrepresentations to him, or that Aiyegbusi participated in any alleged misrepresentations made to Nkansah by the codefendants; and (5) Nkansah never presented any evidence in the Underlying Action that "Aiyegbusi intended to 'exercise dominion or control over' Nkansah's funds or that Aiyegbusi in fact exercised dominion or control over Nkansah's funds." Am. Compl. ¶¶ 6, 20, 26, 28, 32. The Court thus concludes that the Amended Complaint sufficiently pleads that Nkansah lacked a reasonable basis to initiate the Underlying Action.

Third, Nkansah argues that he had probable cause to initiate the Underlying Action against Aiyegbusi because he "was clearly entitled to rely on the advice and work product of his counsel" in the Underlying Action. Mot. Dismiss at 12. Thus, according to Nkansah, "any complaints regarding the framing of Nkansah's legal arguments cannot properly be leveled at [Nkansah.]" *Id.* At the outset, the Court notes that Nkansah is correct that he was entitled to rely on the advice of counsel in the Underlying Action. *See* 42 Pa. Cons. Stat. § 8352(2). However, reliance on the advice of counsel is a "defense to a Dragonetti Action." *Miller v. St. Luke's Univ. Health Network*, 142 A.3d 884, 897 (Pa. Super. Ct. 2016); *Phelps v. Caperoon*, 190 A.3d 1230, 1238 (Pa. Super. Ct. 2018) ("[T]he language of the Dragonetti statute explicitly permits a

11

defense of 'advice of counsel.'").  Therefore, Nkansah must prove that he "reasonably believe[d] in the existence of the facts upon which the claim is based," and "believe[d] to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."  42 Pa. Cons. Stat. § 8352.

The Court may only grant Nkansah's motion to dismiss based on the defense of reliance on advice of counsel, if "the facts needed to support the defense are clear from the face of the complaint."  *Foster v. City of Phila.*, No. CV 12-5851, 2013 WL 12149716, at *1 n.1 (E.D. Pa. Sept. 12, 2013) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001), *DeMary v. Latrobe Printing & Pub. Co.*, 762 A.2d 758, 761-62 (Pa. Super. Ct. 2000)).  The Amended Complaint says nothing regarding Nkansah's claimed reliance on advice of counsel.  Accordingly, the Court does not address at this stage of the proceedings Nkansah's argument that he had probable cause to initiate the Underlying Action based on his reliance on advice of counsel.

Based on the foregoing, the Court concludes that the Amended Complaint sufficiently alleges that Nkansah initiated the Underlying Action in a grossly negligent manner and without probable cause.

### C.  Improper Purpose

Finally, Nkansah argues that "Aiyegbusi has pled no facts herein that could possibly give rise to any inference of improper purpose."  Mot. Dismiss at 13.  Specifically, Nkansah asserts that the allegation in the Amended Complaint that "Nkansah initiated the Underlying Action with the purpose of using the lawsuit as a means to make Aiyegbusi give Nkansah the funds Nkansah voluntarily transmitted to Juices after Nkansah's business relationship with the other members of Juices went sour," Am. Compl. ¶ 40, shows that Nkansah's purpose in initiating the underlying lawsuit was to recover "the very damages claimed" in that lawsuit, which is a "*proper*

12

use of the adjudicatory process." Mot. Dismiss at 14 (emphasis in original). Therefore, according to Nkansah, Aiyegbusi failed to adequately allege an improper purpose. The Court disagrees.

"A party seeking redress under the Dragonetti Act . . . must [] prove the Underlying Action was filed for an improper purpose." *Schmidt*, 217 F. App'x at 155. "An improper purpose is 'a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based.'" *Montgomery v. Midland Credit Mgmt., Inc.*, No. CIV.A. 12-1244, 2014 WL 3563198, at *8 (E.D. Pa. June 19, 2014) (quoting 42 Pa. Cons. Stat. § 8351(a)(1)); 42 Pa. Cons. Stat. §§ 8351(a)(1), 8354(4). Importantly, "[a]n improper purpose may be inferred where the action is filed without justification." *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 295 (E.D. Pa. 2009); *Perelman v. Perelman*, 125 A.3d 1259, 1264 (Pa. Super. Ct. 2015); *see also Bainbridge v. Ocwen Loan Servicing, LLC*, No. 3:16-CV-0411, 2017 WL 1178047, at *14 (M.D. Pa. Mar. 30, 2017) ("[A]n improper purpose may . . . be inferred if the action is filed without probable cause."). "Thus, a claim for wrongful use of civil proceedings will lie 'if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause.'" *Perelman*, 125 A.3d at 1264 (quoting *Gentzler v. Atlee*, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995)). "Moreover, whether an alleged purpose is improper is an issue for the jury to decide." *Ciolli*, 625 F. Supp. 2d at 295 (citing *Bannar v. Miller*, 701 A.2d 242, 249 (Pa. Super. Ct. 1997)).

In this case, the Amended Complaint alleges that the Underlying Action "was instituted primarily for an improper purpose and was malicious." Am. Compl. ¶ 41. Specifically, the Amended Complaint states that "Nkansah initiated the Underlying Action with the purpose of using the lawsuit as a means to make Aiyegbusi give Nkansah the funds Nkansah voluntarily

13

transmitted to Juices after Nkansah's business relationship with the other members of Juices

went sour." *Id.* ¶ 40.  Moreover, as discussed *supra*, the Amended Complaint sufficiently alleges

that Nkansah initiated the Underlying Action without probable cause, which is sufficient to

create an inference of an improper purpose.  *See Ciolli*, 625 F. Supp. 2d at 295; *Perelman*, 125

A.3d at 1264; *Bainbridge*, 2017 WL 1178047, at *14.  The Court thus concludes that the

Amended Complaint sufficiently pleads that Nkansah initiated the Underlying Action for an

improper purpose.

## VI.    CONCLUSION

For the foregoing reasons, Nkansah's Motion to Dismiss is denied.