IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOTUN AIYEGBUSI,** | : |
| **Plaintiff,** | : CIVIL ACTION |
| v. | : NO. 19-4319 |
| **STEPHEN NKANSAH,** | : |
| **Defendant/Third-Party Plaintiff,** | : |
| v. | : |
| **KLEINBARD, LLC,** *et al.*, | : |
| **Third-Party Defendants.** | : |

**MEMORANDUM**

**Tucker, J.**                                                                              **March 21, 2022**

      Before the Court is Defendant Stephen Nkansah's Motion for Summary Judgment (ECF Nos. 49), Plaintiff Dotun Aiyegbusi's Response in Opposition (ECF No. 57), and Defendant's Reply in Further Support of the Motion (ECF No. 58). Defendant argues that Plaintiff cannot meet the burden of proof in this "wrongful use of civil proceedings" cause of action under the Dragonetti Act. *See* 42 Pa. Cons.Stat. Ann. §§ 8351–54. For the reasons set forth below, Defendant's Motion is **DENIED**.

      In addition, before the Court is Third-Party Defendants Kleinbard, LLC, Edward M. Dunham, Jr., and Eric J. Schreiner's Motion for Summary Judgment (ECF No. 50), Defendant/Third-Party Plaintiff Stephen Nkansah's Response in Opposition (ECF No. 53), and

Third-Party Defendants' Reply in Further Support of the Motion (ECF No. 56). For the reasons set forth below, Third-Party Defendants' Motion is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Wazzoo Juices Investment

This Dragonetti Act suit stems from a business transaction involving Plaintiff Dotun Aiyebusi ("Aiyegbusi") and Defendant Stephen Nkansah ("Nkansah"), and the underlying action that followed. In or around July 2014, Aiyegbusi and Nkansah began investing in Wazzoo Juices, an international company incorporated in Medellin, Colombia. Aiyegbusi was first to invest money in the venture. He did so by fulfilling a Colombian bank's requisite procedures for foreign investors (i.e., sending a notarized letter that included his United States passport information). Pl.'s Resp. In Opp'n 2, ECF No 57-4. Hesitant to provide confidential information, Nkansah did not wish to follow the Colombian bank's procedures, as Aiyegbusi did. Instead, the Parties agreed that Nkansah would wire Aiyegbusi his investment in Wazzoo Juices, in the amount of $20,000, which Aiyegbusi would then forward to the company. It should be noted that the Parties do not dispute that Aiyegbusi duly fulfilled this promise. By December 2014, Nkansah became dissatisfied with the venture and demanded that Aiyegbusi return his investment.[2] When he did not receive it, he initiated a lawsuit for fraud against several involved parties, including Aiyegbusi. Nkansah later added a conversion claim in an amended complaint.

---

[1] This section primarily draws from Defendant's Statement of Undisputed Facts. ECF No. 49-3. The Court will not cite to each statement. Where discrepancies are present, the Court will cite to Plaintiff's Response and Opposition to Defendant's Statement or Plaintiff's Concise Statement of Disputed Material Facts. ECF Nos. 57-3 and 57-4, respectively.

[2] Though not stated definitively in Nkansah's motion, it appears he suspected that another party misappropriated his Wazzoo Juices investment for another purpose. Pl.'s Resp. In Opp'n 3, ECF No 57-4.

### B. The Underlying Action

On February 4, 2016, Nkansah sued Aiyegbusi here in the United States District Court for the Eastern District of Pennsylvania.[3] Aiyegbusi subsequently moved for summary judgment. Ultimately, the Court granted Aiyegbusi's motion and dismissed Nkansah's fraud claim with prejudice. Separately, Nkansah stipulated to dismiss the conversion claim with prejudice.

### C. The Instant Action

On September 19, 2019, Aiyegbusi initiated the instant action against Nkansah for "wrongful use of civil proceedings" under the Dragonetti Act. 42 Pa.C.S.A. § 8351(a). In his Second Amended Complaint, he claims that Nkansah: (1) was grossly negligent in bringing the underlying lawsuit; (2) lacked probable cause to assert fraud and conversion claims, but did so nonetheless out of "malicious prosecution and/or reckless disregard for the harm" resulting from such claims; and (3) initiated the suit for an improper purpose, namely, to make Aiyegbusi pay Nkansah the funds that he voluntarily transmitted to Wazzoo Juices. Pl.'s Second Amended Compl. ¶¶ 39-40, 44, ECF No. 30. Aiyegbusi asserts damages in excess of $100,000, emotional pain and suffering, and reputational harm. *Id*. at ¶ 49. In particular, Aiyegbusi seeks, *inter alia*, punitive damages. *Id*.

In addition to answering Aiyegbusi's Second Amended Complaint, Nkansah filed a Third-Party Complaint against his legal representation in the underlying action—the law firm Kleinbard, LLC and its attorneys, Edward M. Dunham, Jr.,[4] and Eric J. Schreiner (collectively, "Third-Party Defendants"). Third Party Compl., ECF No. 35. Nkansah alleges that he commenced and maintained the suit against Aiyegbusi in reliance on Third-Party Defendants'

---

[3] *Stephen Nkansah v. Robert Towns, et al*. Civil Action No. 2:16-cv-00587.
[4] Mr. Dunham no longer works at Kleinbard, LLC and has since moved to a different firm.

advice, thus, he is entitled to indemnification from Third-Party Defendants if he is determined to be liable to Aiyegbusi. *Id*. The Court disagrees.

## II.   STANDARD OF REVIEW

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, she has the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains her initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact

for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the Court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

As to Nkansah's Motion for Summary Judgment, the Court determines that Aiyegbusi offers genuine issues of material fact to survive the motion. In contrast, the Court concludes that the Third-Party Defendants' Motion for Summary Judgment must be granted as a matter of law and dismisses Nkansah's Third-Party Complaint accordingly. Both motions are addressed in turn.

#### A. Nkansah's Motion for Summary Judgment

##### i. Wrongful Use of Civil Proceedings Under the Dragonetti Act

The Dragonetti Act—which codifies the common law action for malicious use of civil proceedings—creates liability for a person who "takes part in the procurement, initiation, or continuation of civil proceedings against another." 42 Pa. Cons.Stat. § 8351(a). The principal gravamen of this tort is that a party may not leverage the legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297 (3d Cir.2003) (quoting *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (1987)).

Liability is established where one "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa. Cons.Stat. § 8351(a)(1). In addition, the underlying proceeding must have terminated in favor of the person against whom they were brought. *Id*. at (a)(2). Where the facts are not disputed, the court determines the existence of probable cause, gross negligence, or improper purpose as a matter of law. *Schmidt v. Currie*, 217 F. App' x 153, 155 (3d Cir. 2007). However, "[i]f there is a factual dispute as to probable cause, gross negligence, or improper purpose, then the matter is for the fact-finder to determine." *Id*. at. 155–56 (citing *Bannar v. Miller*, 701 A.2d 242, 249 (Pa. Super. Ct. 1997)).

The Parties do not dispute that Aiyegbusi prevailed in the underlying action. As discussed above, Nkansah's fraud claim was dismissed with prejudice for failure to state a claim. Though Nkansah's conversion claim was voluntarily dismissed, voluntary dismissal of the underlying proceeding constitutes a "favorable termination" for the purposes of Dragonetti actions as well. *See Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 689–90 (E.D. Pa. Feb. 19, 2009) (citing *Doby v. Decrescenzo*, 1996 WL 510095, at *16 (E.D. Pa. Sept. 9, 1996). It being established that the underlying action terminated in Aiyegbusi's favor, the Court chiefly focuses its analysis on whether a reasonable jury could find that Nkansah: (1) acted in a grossly negligent manner; (2) lacked probable cause to pursue the underlying action against Aiyegbusi; and (3) brought the underlying action for an improper purpose.

### a. A Reasonable Jury Could Conclude that Nkansah Acted with Gross Negligence

Gross negligence is regarded as "a lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another

party, who may typically recover exemplary damages." *Di Loreto*, 600 F.Supp.2d at 690. It has also been defined as "the want of even scant care" and "the failure to exercise even that care which a careless person would use." *Hart v. O'Malley*, 2001 PA Super 221, ¶ 22, 781 A.2d 1211, 1218 (2001).

      Here, there exists a genuine dispute of material fact as to whether Nkansah acted in a grossly negligent manner. Viewing the evidence in a light most favorable to Aiyegbusi, it appears that Aiyegbusi's sole engagement with Nkansah's investment was merely to transfer it to Wazzoo Juices, just as Nkansah requested. Nkansah offered no evidence that, for example, Aiyegbusi either: (1) directly knew how his investment funds were being used after the transfer; or (2) knew that other involved parties were engaging in suspicious activity regarding his investment funds and remained silent.

      Moreover, the record reveals that Nkansah's attorneys (i.e., the Third-Party Defendants) advised him that his claims against Aiyegbusi would be difficult to prove, and as a result, urged Nkansah to provide them with *any* evidence indicating that Aiyegbusi engaged in questionable behavior. For instance, in a September 22, 2015 email to Nkansah, Dunham warned him that "there are a number of factors that will argue against proceeding including the fact that there are apparently no documents or other written evidence of your claim..." Dunham Dep. 27-32, ECF No. 57-6. Nkansah was again asked to produce this information on October 1, 2015. *Id*. at 44-45. Yet, as Dunham admits, this evidence was never produced. *Id.* at 32, 45. In the absence of evidence even *suggesting* that Aiyegbusi committed fraud or conversion, Nkansah insisted on proceeding with the underlying action anyway. Therefore, a genuine issue of material fact exists as to whether, in initiating the underlying action without any evidence that Aiyegbusi acted

wrongly, Nkansah recklessly disregarded the consequences that his actions would have in forcing Aiyegbusi to defend himself in the suit and thus, was grossly negligent.

### b. A Reasonable Jury Could Conclude that Nkansah Lacked Probable Cause

On these same grounds, a reasonable jury could also determine that Nkansah lacked probable cause to bring the underlying action against Aiyegbusi. Probable cause exists when a party who commences an action "reasonably believes in the existence of the facts upon which the claim is based" and either:

> (1) reasonably believes that under those facts the claim may be valid under the existing or developing law;
> (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
> (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. Const. Stat. § 8352.

Hence, the Court examines whether Nkansah reasonably believed in the existence of facts that would give rise to a claim of fraud or conversion.

### 1. Nkansah's Fraud Claim

To prove fraud, a plaintiff must show: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). Here, Nkansah cannot even satisfy the first prong of this test. Aiyegbusi's only action was to transmit Nkansah's funds. He made no representations about how the funds were being used, and as discussed above,

8

Nkansah failed to provide any evidence indicating otherwise. Indeed, Dunham also informed Nkansah via email that "the facts supporting a claim of fraud are less clear" and thus hoped that Nkansah would be able to produce such facts before proceeding with the action. ECF No. 57-9 at 12.

### 2. Nkansah's Conversion Claim

Conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 365 Pa. Super. 481, 484 (1987). Also, a party seeking relief for conversion must show that there was "an intent to exercise dominion and control over the chattel that was inconsistent with Plaintiff's right to the chattel." *Id*. at 485. Here, Nkansah is similarly unable to demonstrate that Aiyegbusi engaged in conversion. Nkansah himself does not dispute that Aiyegbusi immediately transferred his investment to Wazzoo Juices, as requested. Mot. for Summary Judgment ¶ 12, ECF No. 49-3. Thus, the requisite intent to exercise control over Nkansah's funds is glaringly absent.

Based on these facts, a reasonable jury could conclude that Nkansah had no probable cause to pursue fraud and conversion claims against Aiyegbusi.

### c. A Reasonable Jury Could Conclude that Nkansah Pursued Litigation Against Aiyegbusi for an Improper Purpose

A review of the evidence evinces a genuine dispute of material fact regarding Nkansah's purpose in bringing the underlying action. "An improper purpose may be inferred where the action is filed without justification." *Broadwater v. Sentner*, 1999 PA Super 24, ¶ 15, 725 A.2d 779, 784 (1999) (citing *Gentzler v. Atlee*, 443 Pa.Super. 128, 660 A.2d 1378, 1382 n. 6 (1995)). Here, there exists several material facts that may permit a jury to infer an improper purpose, namely that: (1) Nkansah and Aiyegbusi never executed any oral or written agreement regarding

the return of his investment funds; (2) when Nkansah was asked by his attorneys why he chose to wire the money through Aiyegbusi, he stated that he wanted to "tie the money" to the partners in case something went wrong with the deal (Smalley Dep. 16, ECF No. 57-6); and (3) prior to commencing the underlying action, Nkansah asked his attorneys whether he could attach Aiyegbusi's assets pre-judgment (Dunham Dep. 42-43, ECF No. 57-6; ECF No. 57-10). Considering the factual dispute regarding Nkansah's motive for initiating the underlying action, the Court declines to dismiss Aiyegbusi's Dragonetti claims.

### ii.  Punitive Damages and Damages for Reputational Harm

A plaintiff who establishes a Defendant's liability under the Dragonetti Act is entitled to recover for the following: "(1) harm suffered during the course of the proceeding; (2) harm to his reputation by alleged defamatory matter as the basis of the proceedings; (3) expenses, including attorney's fees, that have been incurred in defending against the proceedings; (4) any specific pecuniary loss caused by the proceedings; (5) any emotional distress caused by the proceedings; and (6) punitive damages." *A.G. Cullen Const., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 2009 WL 382501, at *14 (W.D. Pa. Feb. 13, 2009) (citing 42 Pa. Cons.Stat. Ann. § 8353). Of particular concern to Nkansah is Aiyegbusi's claims of punitive damages and reputational harm.

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Under Pennsylvania law, such claims require a plaintiff to establish that: "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act ... in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 124, 870 A.2d 766, 772 (2005). Here, there exists a genuine issue of material fact as to whether Nkansah's pursuit of the underlying action—with apparent knowledge that Aiyegbusi merely

wired his investment funds immediately and did nothing more—amounts to outrageous or reckless conduct that warrants punitive damages. Thus, Aiyegbusi's punitive damages claim remains.

As well, Aiyegbusi's claim for damages for reputational harm must survive summary judgment. Nkansah argues that Aiyegbusi's claim must be dismissed because he failed to provide evidence substantiating his reputational harm allegations, as is required in defamation suits. *See, e.g., Pyle v. Meritor Sav. Bank*, 1996 WL 115048, at *4 (E.D. Pa. Mar. 13, 1996) (granting summary judgment where plaintiff failed to provide evidence supporting his defamation claim). However, as Nkansah concedes in his motion, here, Aiyegbusi does not bring a cause of action for defamation against him. Rather, Aiyegbusi purely sues Nkansah for wrongful use of civil proceedings. In requesting that the Court apply the heightened defamation requirement, Nkansah improperly attempts to transform the wrongful use of civil proceedings tort into a defamation action—the Court will not permit this. *See Catania v. Hanover Ins. Co*., 389 Pa. Super. 144, 149, 566 A.2d 885, 888 (1989) ("While we recognize that the Dragonetti Act does permit recovery for damage to reputation and emotional distress, this fact alone does not transform this tort, the purpose of which is to discourage baseless civil suits, into an action protecting against false statements"). Given that the Court finds that a reasonable jury could conclude that Nkansah is at fault under the Dragonetti Act, if it does so, then it could subsequently grant Aiyegbusi damages for reputational harm under 42 Pa. Cons.Stat. Ann. § 8353.

Accordingly, the Court denies Nkansah's Motion for Summary Judgment.

### B. Third-Party Defendants' Motion for Summary Judgment

In Nkansah's Third-Party Complaint against the law firm Kleinbard, LLC and attorneys Edward M. Dunham, Jr., and Eric J. Schreiner (Third-Party Defendants), he asserts that if he is

found to be liable to Aiyegbusi, then he is entitled to indemnification from them. Third Party Compl. ¶¶ 91-96, ECF No. 35. Third-Party Defendants claim that they are entitled to summary judgment because: (1) Nkansah cannot establish that he is entitled to indemnification; and (2) in suits against attorneys in violation of the Dragonetti Act, the plaintiff is obligated to provide expert testimony establishing the appropriate standard of care. The Court agrees.

Dragonetti actions against attorneys are analogous to legal malpractice actions, thus, a plaintiff suing an attorney under the Act is required to produce expert testimony to survive summary judgment. *See Schmidt v. Currie*, 217 F. App' x 153, 156-57 (3d Cir. 2007); *see also Pendergrass v. Pendergrass*, 518 F. Supp. 3d 839, 848 (E.D. Pa. Feb. 10, 2021). The only exception to this rule occurs where "the issues are simple and within a layperson's comprehension." *Id*. Here, Nkansah argues that the expert testimony requirement is inapplicable to the case at bar because his cause of action against Third-Party Defendants is not for wrongful use of civil proceedings, rather, it is solely for indemnification. Resp. in Opp. 23, ECF No. 53. To be sure, Nkansah is correct in that his Third-Party Complaint makes no *express* Dragonetti claim against Third-Party Defendants. But as discussed below, the Dragonetti and indemnification issues are inextricably tied—that is, Nkansah still must prove that his former attorneys are liable under the Act to prevail on his own indemnification claim.

Under Pennsylvania law, indemnification is defined as a "right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Builders Supply Co. v. McCabe*, 366 Pa. 322, 325, 77 A.2d 368, 370 (1951). It follows that "the indemnitee [has] the burden of justifying his payment of damages by offering against the indemnitor in the second action practically the same evidence as

was relied on to establish the case against the indemnitee in the first action." *ExxonMobil Oil Corp. v. Lucchesi*, 2004 WL 1699203, at *3 (E.D. Pa. July 29, 2004) (quoting *Besser Co. v. Paco Corp.*, 671 F. Supp. 1010, 1012 (M.D. Pa. 1987)). Essentially, "the indemnitee is required to prove his case against the indemnitor in the same way that the injured person would have been obligated to do." *Id*. Therefore, if a jury found that Nkansah was liable to Aiyegbusi for wrongful use of civil proceedings, he in turn would be required to demonstrate that Third-Party Defendants are primarily liable for this same cause of action. As a matter of law, he cannot do so, as he has failed to provide any expert testimony supporting this claim. *See Schmidt*, 217 F. App'x at 156. Nor can he show that this matter is so "simple" that expert testimony is unnecessary; indeed, a jury cannot, on its own, "navigate the contours of professional legal judgment and determine whether [Third-Party Defendants] made a proper assessment whether to initiate or continue a civil action against the plaintiff in the underlying action." *Id*. at 157. On these grounds, Third-Party Defendants are entitled to judgment as a matter of law and the Court dismisses Nkansah's Third-Party Complaint accordingly.

## IV. CONCLUSION

For the reasons discussed above, Defendant Stephen Nkansah's Motion for Summary Judgment is **DENIED** and Third-Party Defendants Kleinbard, LLC, Edward M. Dunham, Jr., and Eric J. Schreiner's Motion for Summary Judgment is **GRANTED**. An appropriate Order follows.